UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIAN GRIGGS,

        Plaintiff,

v.                                           Case No: 6:17-cv-1808-Orl-31GJK

AMY VITANI, WAYNE IVEY, CHIEF DEMORAT, JOHN DOE ONE, JOHN DOE TWO, JOHN DOE THREE, JOHN DOES 4-8 and ARMOR CORRECTIONAL HEALTH SERVICES,

        Defendants.
_____/

## ORDER

This case is before the Court on Defendants Armor Correctional Health Services' ("Armor") and Amy Vitani's Motion to Dismiss Second Amended Civil Rights Complaint (Doc. 24) and Defendants Wayne Ivey's and Chief Demorat's Motion to Dismiss Second Amended Complaint (Doc. 25). Plaintiff filed a Response in Opposition to Defendants Armor Correctional Health Services and Amy Vitani's Motion to Dismiss ("Response to Motion to Dismiss," Doc. 26) and a Motion for Leave to File a Third Amended Complaint (Doc. 49). For the following reasons, Defendants Armor Correctional Health Services and Amy Vitani's Motion to Dismiss Second Amended Civil Rights Complaint (Doc. 24), Defendants Wayne Ivey and Chief Demorat's Motion to Dismiss Second Amended Complaint (Doc. 25) are granted, and Plaintiff's Motion for Leave to File a Third

Amended Complaint is denied.

## I. MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiff seeks leave to file a Third Amended Complaint. (Doc. 49.) Plaintiff filed his proposed amended complaint with the motion. *See* Doc. 49-1 at 1-20. The Third Amended Complaint (Doc. 49-1) is essentially identical to the Second Amended Complaint (Doc. 9) except Plaintiff alleges in the Third Amended Complaint that Defendants violated his Eighth Amendment rights versus his Fourteenth Amendment rights. *See* Doc. Nos. 9 at 7; 49-1 at 15. The Court will consider Plaintiff's allegations in the light most favorable to him in determining whether Plaintiff has alleged a constitutional violation, regardless of the constitutional label attached by Plaintiff. Consequently, it is not necessary for Plaintiff to amend the complaint for this reason. Accordingly, Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 49) is denied.

## II. FACTUAL BACKGROUND[1]

Plaintiff Brian Griggs, who was a pretrial detainee when he initiated this action, is suing Defendants Amy Vitani, Wayne Ivey, Chief Demorat, Armor, and eight John Doe Defendants for denial of adequate medical care.[2] (Doc. 9 at 4.) Defendant Ivey, as the

---

[1] The following statement of facts is derived from Plaintiff's Second Amended Complaint (Doc. 9), the allegations of which this Court must take as true in ruling on a motion to dismiss. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

[2] Plaintiff was convicted and is now in the custody of the Florida Department of Corrections. Because Plaintiff is no longer incarcerated at the Brevard County Jail, the Court has no authority to grant any declaratory or injunctive relief against Defendants.

Sheriff of Brevard County, is the final policy maker for the Brevard County Sheriff's Office and Brevard County Jail ("Jail"). (*Id.* at 5.) Defendant Demorat, as the Chief Deputy Sheriff of the Jail, is responsible for the maintenance and administration at the Jail. (*Id.*) Defendant Armor provides medical care at the Jail per its contract with Brevard County. (*Id.* at 5-6.) Defendant Vitani, the Health Service Administrator in charge of Armor at the Jail, trains and supervises nurses at the Jail, answers sick calls and medical grievances, and makes inmate referrals to the doctor. (*Id.* at 6.) Plaintiff sues Defendants Ivey, Demorat, and Vitani in their official and individual capacities and Defendant Armor in its official capacity. (*Id.* at 2-4.)

Plaintiff asserts that he dislocated his shoulder around April 5, 2017, while sleeping. (*Id.* at 9.) Plaintiff submitted sick calls or medical requests regarding his pain and injury on April 5, 11, 22, and 25, 2017, May 15, 2017, June 5 and 19, 2017, and September 9, 15, and 28, 2017, but did not receive a response or referral to a doctor. (*Id.*) According to Plaintiff, it is Defendant Armor's standard policy and procedure for nurses to answer inmates' medical requests to determine the nature and validity of the request and to then prescribe over-the-counter medication or make a referral to a doctor. (*Id.*)

More than a week after dislocating his shoulder, Plaintiff had an x-ray on April 13, 2017. (*Id.*) Two weeks after his injury, around April 25, 2017, an unidentified doctor told Plaintiff that there is nothing that could be done for his shoulder because they do not perform surgery at the Jail. (*Id.*) The doctor, however, prescribed Plaintiff Meloxicam, a mild muscle relaxer. (*Id.*) Plaintiff continued to ask the doctor for an MRI or CT scan to

3

see if he had nerve, ligament, or tendon damage. (*Id*.) The doctor refused to give Plaintiff an MRI. (*Id*.)

Plaintiff dislocated his shoulder a second time on June 5, 2017. (*Id.* at 12.) Plaintiff continued to submit sick calls and medical requests and was seen by a doctor again sometime between June 19 and 30, 2017. (*Id*.) The doctor told Plaintiff that the only thing he would receive for his injury was a renewal prescription of Meloxicam. (*Id*. at 9-10.)

For an unspecified period, Plaintiff did not receive his medication. (*Id*. at 10.) Plaintiff filed medical grievances on July 1 and 5, August 6, 18, and 22, and September 4 and 25, 2017. (*Id*.) Defendant Vitani shrugged off Plaintiff's requests for treatment and in some instances refused to respond to his grievances. (*Id*.) According to Plaintiff, Defendant Armor's and the Jail's policy is to require inmates to submit three sick calls before being referred to a doctor. (*Id*.)

### III. STANDARD FOR MOTION TO DISMISS

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In the case of a *pro se* action, courts should construe the complaint

4

more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

Exhibits to a pleading "are part of the pleading 'for all purposes.'" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (quoting Fed. R. Civ. P. 10(c)). Consequently, if "the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id.* at 1206. However, "Rule 10(c) 'does not require a plaintiff to adopt every word within [an exhibit] as true. . .'" when the exhibit contains "unilateral statements made by a defendant" and those statements conflict with the plaintiff's allegations in the complaint, and the exhibit "does not itself form the basis for the allegations[.]" *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454–56 (7th Cir. 1998)). In other words, if the plaintiff attaches an exhibit to a pleading for a reason "other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). In contrast, if the exhibit to the complaint forms the basis of the claim, or if "the complaint otherwise shows that the plaintiff has adopted the contents of the document, [then] crediting the document over conflicting allegations in the complaint is proper." *Id.* As a result, courts should consider the nature of the exhibit and why the plaintiff attached it to the complaint before treating the contents of the exhibit as true. *Id.*

IV. ANALYSIS

A. Exhaustion of Administrative Remedies

Defendants Armor and Vitani contend the action should be dismissed because Plaintiff failed to exhaust his administrative remedies. *See* Doc. 24 at 2-4. Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action:

**(a)   Applicability of administrative remedies**

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court of the United States has held that § 1997e's exhaustion requirement requires "'proper exhaustion,'" such that "a prisoner must exhaust all prescribed administrative remedies available to him . . . before filing a lawsuit to seek judicial redress." *Garcia v. Glover*, 197 F. App'x 866, 868 (11th Cir. 2006) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court must first consider the factual allegations in the motion to dismiss and those in the plaintiff's response to the motion, and if they conflict, the court must take the plaintiff's version of the facts as true. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "'If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'" *Id*. If the court determines that the complaint is not subject to dismissal

considering the plaintiff's factual allegations to be true, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*.

Armor's policy for inmate health grievances requires an inmate to appeal any grievance finding if unresolved to the Facility Administrator or designee. (Doc. 24-1 at 3.) If the issue is not resolved at this level, the inmate may further appeal the finding to a regional representative of Armor. (*Id*.)

Defendants Armor and Vitani contend that Plaintiff failed to appeal the denial of his grievances to the Facility Administrator and the regional representative of Armor. (Doc. 24 at 3-4.) Plaintiff maintains that he appealed the denial of his July 1 and 5, August 6, 18, and 22, September 4 and 25, 2017 grievances and received no response. (Doc. 42 at 2.) The Supreme Court of the United States has recognized that "interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). Taking Plaintiff's factual allegation as true, Plaintiff has shown that the administrative remedy was unavailable to him thereby relieving him of the exhaustion requirement. *See, e.g., Goebert v. Lee County*, 510 F3d 1312, 1322-23 (11th Cir. 2007) (holding that an administrative remedy must be available because it is "capable of use for the accomplishment of [its] purpose" before exhaustion will be required); *see*

*also Turner*, 541 F.3d at 1086. Defendants have not filed any evidence refuting Plaintiff's factual allegations. Consequently, Defendants have not met their burden of showing that Plaintiff failed to exhaust his available administrative remedies. Therefore, Defendants are not entitled to the dismissal of the action on this basis.

**B.    Denial of Adequate Medical Care Claims**

Defendants Armor, Vitani, Ivey, and Demorat contend that Plaintiff has failed to assert a constitutional violation. (Doc. Nos. 24 at 5-9; 25 at 4-15.) Defendants Ivey and Demorat argue that Plaintiff has not alleged they personally participated in the alleged constitutional violation or that a causal connection exists between them and the alleged violation. (Doc. 25 at 6-8.) Defendants Vitani and Armor argue respectively that Plaintiff has not alleged that Vitani had subjective knowledge of a risk of serious harm or that her conduct was more than gross negligence or alleged an unconstitutional policy. (Doc. 24 at 8-10.)

To establish liability under § 1983 for denial of adequate medical care, a plaintiff must show that the failure to provide him with medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution.[3] A plaintiff must demonstrate that his inadequate care arose from a deliberate indifference

---

[3] Because Plaintiff was a pre-trial detainee when his alleged lack of medical care occurred, his claim must be analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

8

to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A prisoner must show (1) an objectively serious medical need existed, and (2) the defendants acted with deliberate indifference to that need. *Jacoby v. Baldwin Cty.*, 596 F. App'x 757, 763–64 (11th Cir. 2014). A serious medical need is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). To establish deliberate indifference, a prisoner must prove that a defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Burnette*, 533 F.3d at 1330 (quotation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834-835 (1994).

"'[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003)).

> [T]o hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Id.*

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

9

> *Id.* (internal quotation marks omitted) (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation mark omitted). In short, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone,* 326 F.3d at 1360 (alteration in original) (internal quotation marks omitted).

*Id.* at 1047-48.

Moreover, a suit against an individual in his official capacity is the same as a suit against the municipality. *See Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005) (citing *McMillian v. Monroe County*, 520 U.S. 781, 785 n. 2 (1997)). "When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Id.* at 1221 (footnote omitted) (citing *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986)).

Plaintiff has not alleged that Defendant Ivey or Demorat directly participated in the alleged denial of medical care. Plaintiff complains that Defendants have a policy of requiring nurses to review medical requests and requiring inmates to submit three medical requests before seeing a doctor. This policy, however, does not equate to a denial of medical care. *See, e.g., Waldrop*, 871 F.2d at 1033 ("a simple difference in medical opinion" does not constitute deliberate indifference). Furthermore, although Plaintiff asserts a doctor told him that they do not perform surgery at the Jail, Plaintiff has not alleged that Defendants had a policy prohibiting surgery. Plaintiff, therefore, has not

alleged a causal connection between Defendants Ivey's and Demorat's actions and the alleged denial of adequate medical care. Consequently, Plaintiff has not stated a claim for denial of medical care against Defendants Ivey and Demorat in their individual capacities.

Likewise, Plaintiff has not alleged any facts demonstrating that the purported constitutional violation resulted from a policy, custom, pattern, or practice of Defendants Ivey, Armor, Demorat, or Vitani. Consequently, Plaintiff has failed to state a claim against Defendants in their official capacities.

Plaintiff alleges that Defendant Vitani knew that he had not been provided his medication and did not respond to his grievances. There are no allegations, however, demonstrating that Defendant Vitani had subjective knowledge of a risk of serious harm to Plaintiff. More importantly, Plaintiff's allegations do not show that Defendant Vitani acted with anything more than gross negligence when she failed to respond to some of Plaintiff's grievances. Consequently, Plaintiff has not stated a claim against Defendant Vitani in her individual capacity.

### B. John Doe Defendants

Plaintiff has named eight John Does as defendants. Generally, "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) A limited exception to this rule exists if "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992). Plaintiff's description of the John Does in

the Second Amended Complaint is insufficient to identify the defendants from the medical providers at that Jail. Furthermore, Plaintiff fails to make any allegations regarding any actions taken by the John Doe Defendants to violate his constitutional rights. Therefore, the John Doe Defendants are dismissed from this action.

In accordance with the foregoing, it is hereby **ORDERED** as follows:

1. Defendants Armor Correctional Health Services' and Amy Vitani's Motion to Dismiss Second Amended Civil Rights Complaint (Doc. 24) and Defendants Wayne Ivey's and Chief Demorat's Motion to Dismiss Second Amended Complaint (Doc. 25) are **GRANTED**.

2. Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 49) is **DENIED**.

3. The Clerk of Court is directed to enter judgment and close this case.

**DONE** and **ORDERED** in Orlando, Florida on January 24, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party
OrlP-1 1/24